UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
PEDRO JUAN TAVARES,                   : 09 Civ. 3499 (JSR) (JCF)
                                      :
               Plaintiff,             :      REPORT AND
                                      :      RECOMMENDATION
     - against -                      :
                                      :
CITY OF NEW YORK; MISS DAVIS,         :
Warden; MR. ANDREW, Deputy Warden     :
of Program; MR. McCOVAN, Assistant    :
Deputy Warden; MR. VOUGHN, Captain;   :
MISS GLOVER, Captain; MR. DeFILECE,   :
Corrections Officer;                  :
                                      :
               Defendants.            :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

     Pedro Juan Tavares, a prison inmate, brings this action pro se
pursuant to 42 U.S.C. § 1983 against the City of New York (the
"City"), Warden Joandrea Davis, Deputy Warden Nathaniel Andrews,
Assistant Deputy Warden McCovan,[1] Captain Christian Naughton,[2]
Captain Lilwania Glover, and Corrections Officer George DeFilece.
The plaintiff claims that while he was detained at the George
Motcham Detention Center ("GMDC") on Rikers Island, the defendants
refused to provide him medically-required shoes, which made it
difficult for him to walk.  He alleges that this deprivation was

_____

     [1] Although the plaintiff names Mr. McCovan in the caption of
his Amended Complaint, he makes no further mention of him.

     [2] Mr. Tavares listed this defendant as Captain Voughn in the
Amended Complaint.  However, the defendants report that subsequent
information provided by the plaintiff indicates that this
defendant's name is actually Captain Christian Naughton.
(Defendants' Memorandum of Law in Support of Their Motion to
Dismiss ("Def. Memo.") at 3 n.2).

retaliation on the part of the defendants for a separate lawsuit that he had filed.   Mr. Tavares also complains of falling in the mess hall and sustaining injuries.   Lastly, he challenges as unconstitutional the living conditions in his dormitory.   The City and Warden Davis[3] (the "Moving Defendants") have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   For the reasons set forth below, I recommend that the plaintiff's claims against these defendants be dismissed with prejudice.

Background

A.   Facts[4]

On December 1, 2008, the Department of Correction of the City of New York ("DOC") instituted a policy prohibiting inmates from wearing their own personal footwear and requiring them to wear a pair of DOC-issued shoes (the "Footwear Policy"), which the plaintiff refers to as "patakis."   (Notice to Inmates from DOC ("DOC Notice"), attached to Amended Complaint ("Amend. Compl."); Amend. Compl., ¶ IID).   Mr. Tavares contends that because he suffers from diabetes, lower back pain, and a hip injury, he must wear special medical shoes that provide him with support.   (Amend. Comp., ¶ II(D)).

---

[3] The other defendants in this case have not been served.

[4] The factual allegations are taken from the Amended Complaint as well as the documents attached to it.

2

On December 5, 2008, the plaintiff filed a complaint with the Inspector General's Office that contested the manner in which GMDC administered the Footwear Policy, including the fact that he was not issued medical shoes despite his having diabetes and "blood circulation problems." (Letter of Pedro Tavares dated Dec. 3, 2008, attached to Amend. Compl., at 1). Mr. Tavares' grievance was denied on the ground that "[o]nly prescribed orthopedic footwear issued via medi[c]al is permissible." (DOC Inmate Grievance 7101 Form dated Dec. 5, 2008 ("12/5/08 Grievance"), attached to Amend. Compl.). The plaintiff immediately requested a medical evaluation in order to qualify for such footwear. (Request for Medical/Mental Health Second Opinion dated Dec. 5, 2008, attached to Amend. Compl.). He claims that on December 11, 2008, he was prescribed supportive shoes,[5] but that he did not receive them until March 9, 2009. (Amend. Compl., ¶ II(D)).

Mr. Tavares asserts that the defendants gave him the "run around" during those three months because he had another civil action pending against GMDC and other prison officials, including Captain Glover. (Amend. Compl., ¶ II(D)). He contends that he found it nearly impossible to walk in the pataki shoes and that he

---

[5] Mr. Tavares attached to the Amended Complaint a "Consultation Request" from the New York City Department of Health and Mental Hygiene dated December 10, 2008. The handwritten notes are difficult to read, but they appear to relate that the plaintiff complained of back pain and to suggest that he be evaluated for supportive footwear. (Consultation Request dated Dec. 10, 2008, attached to Amend. Compl.).

consequently almost wound up in a wheelchair. (Amend. Compl., ¶ III).

The plaintiff claims that, on December 11, 2008, while in GMDC's mess hall for lunch, he sat down at a table which collapsed because it was not bolted to the floor. (Amend. Compl., ¶ II(D); Letter of Pedro Juan Tavares dated Dec. 15, 2008 ("12/15/08 Letter"), attached to Amend. Compl., at 1). He asserts that he tried to balance himself but slipped on the wet floor, falling and hitting the back of his shoulder and the back of his neck. (12/15/08 Letter at 1). In the Amended Complaint, Mr. Tavares attributes his fall to the institution-issued shoes as well as to the fact that the table was not anchored. (Amend. Compl., ¶ II(D)). However, in his grievances to DOC, he says only that his accident was caused by the table not being bolted to the floor and, to a lesser extent, by the floor being wet. (12/15/08 Letter at 1; Grievant's Statement Form dated Dec. 17, 2008, attached to Amend. Compl.; DOC Inmate Grievance 7101 Form dated Dec. 29, 2008, attached to Amend. Compl.; Personal Injury Claim Form dated Jan. 2, 2009, attached to Amend. Compl.).

The plaintiff alleges that after observing him on the floor, Officer DeFelice and Captain Naughton failed to assist him and, instead, left the mess hall. (12/15/08 Letter at 1). Mr. Tavares reports that he was left in the care of inmates for about 30 minutes until he was taken to GMDC's health clinic and subsequently

to Elmhurst Hospital. (12/15/08 Letter at 2). At the hospital, he reported neck, shoulder, and hip pain. (Hospital Transfer Form dated Dec. 12, 2008 ("Hospital Transfer Form"), attached to Amend. Compl.). A medical examination revealed "significant degenerative change" in the upper spine as well as "disk [sic] space narrowing and minimal thecal sac impingement." (Hospital Transfer Form; 12/15/08 Letter at 2). The plaintiff claims that as a result of the fall, he suffers from "constant back and neck pain" and that "related injuries" that he sustained as a result of a previous incident have been aggravated. (Amend. Compl., ¶ III).

Finally, Mr. Tavares complains about the living conditions in a dormitory to which he was recently transferred.[6] He reports that he lives between two inmates who are each two feet from him, that he sleeps in dirty sheets that sometimes are not cleaned for two or three weeks, and that his dorm is full of cockroaches and rats, which enter his bed while he sleeps at night. (Amend. Compl., ¶ II(D)). The plaintiff also asserts that his dorm is infested with bed bugs. (Amend. Compl., ¶ II(D)). Mr. Tavares claims that he is "constantly coughing, flaming [sic] and having chest conge[s]tion due to the lousy living condition." (Amend. Compl., ¶ II(D)).

_____

[6] Mr. Tavares claims that he was transferred by Captain Naughton, in retaliation for asking the captain for his full name in order to file a complaint against him concerning the incident in the mess hall. (12/15/08 Letter at 2).

B.   Procedural History

On October 28, 2008, the plaintiff filed a complaint in this court challenging, among other things, DOC's intention to implement the Footwear Policy.  (Complaint, ¶ IV(H)).  That complaint was dismissed without prejudice by the Honorable Leonard B. Sand, U.S.D.J., who also granted the plaintiff leave to amend.  (Order dated April 7, 2009 ("Order") at 7-8).  On May 27, 2009, the plaintiff filed an Amended Complaint.

Discussion

The Moving Defendants seek dismissal of the Amended Complaint on the grounds that Mr. Tavares (1) failed to exhaust his administrative remedies regarding his living conditions and retaliation claims; (2) failed to allege the personal involvement of any of the individually named defendants; (3) failed to set forth a claim of retaliation with sufficient specificity; and (4) failed to state a claim for municipal liability against the City.[7] (Def. Memo. at 2).  Because the plaintiff's claims against the Moving Defendants lack merit, I need not decide whether they have been exhausted.  42 U.S.C. § 1997e(c)(2) ("In the event that a

_____

[7] The Moving Defendants request that the Amended Complaint "be dismissed as to the individual defendants who have not yet been served for the same reasons it should be dismissed as to Warden Davis." (Def. Memo. at 2).  However, because those defendants have not appeared in this action and because the liability of Warden Davis, who is a supervisor, may differ from that of the other individual defendants, I only address the claims against the Moving Defendants.

claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."); Woodford v. Ngo, 548 U.S. 81, 101 (2006).

A.  Legal Standard for Dismissal

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam); Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004).  A complaint need not contain detailed factual allegations, but must contain more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action.  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)).  Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8.  Id. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

Pro se complaints are held to less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21

(1972); Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing Erickson, 551 U.S. at 94). In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed. See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. See Rodriquez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-54 (2d Cir. 2002). The court may also consider documents necessarily relied upon by the plaintiff in drafting the complaint. Id. at 153-54.

A.   Warden Davis

"'[I]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)); accord Harris v. Westchester County Department of Corrections, No. 06 Civ. 2011,

2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008). Therefore, "to state a claim for damages under § 1983, the plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" Harris, 2008 WL 953616, at *9 (quoting Provost, 262 F.3d at 155). A complaint should be dismissed against a defendant when it "'contains no allegations indicating how the defendant violated the law or injured the plaintiff.'" McCoy v. Goord, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) (quoting Dove v. Fordham University, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999)).

A supervisory official may be found to have been personally involved in a § 1983 violation if: (1) the official participated directly in the violation; (2) the official, after learning of the violation through a report or appeal, failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the official was grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) the official exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004)

(citing <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995));
<u>Washington v. Kelly</u>, No. 03 Civ. 4638, 2004 WL 830084, at *3
(S.D.N.Y. April 13, 2004).

In response to the Moving Defendants' claim that he has failed
to assert their personal involvement, Mr. Tavares states --
somewhat contradictorily -- both that he named the officers in his
grievances and that he will name them "once[] defendants file sworn
affidavits and other d[o]cuments."   (Plaintiff's Reply to
Defendant's Memorandum of Law in Support of Their Motion to Dismiss
Under Rule 12(b)(6) ("Pl. Reply") at 7).   As the Moving Defendants
correctly note, Mr. Tavares is mistaken in his contention that he
can defeat a motion to dismiss by relying on evidence to be
produced during discovery.   Therefore, the analysis must focus on
what he alleges in his Amended Complaint and the documents attached
thereto.   <u>See</u> <u>Chambers</u>, 282 F.3d at 152-54.

Quite simply, Mr. Tavares makes no allegation in the Amended
Complaint that Warden Davis was personally involved in violating
his constitutional rights.   He does not allege that she created or
perpetuated the living conditions of which he complains; nor does
he assert that she contributed to his allegedly inadequate medical
care by withholding his medical shoes or denying him treatment
after his fall in the mess hall.   And the plaintiff does not
contend that Warden Davis personally retaliated against him for
filing a civil action.

10

Mr. Tavares comes closest to alleging Warden Davis' personal involvement in his reply papers, to which he attached three letters that he sent to this defendant.  In the first, he complains of the living conditions in his dorm.  (Letter of Pedro Tavares dated March 9, 2009, attached as Exh. A to Pl. Reply).  In the next two, he notes that he has not received a response to his initial letter. (Letter of Pedro Tavares dated March 20, 2009, attached as Exh. B to Pl. Reply; Letter of Pedro Tavares dated April 28, 2009, attached as Exh. C to Pl. Reply).  Because these letters were not attached to the Amended Complaint, they need not be considered in deciding a motion to dismiss.  In any event, "the receipt of letters or grievances, by itself, does not amount to personal involvement." Mateo v. Fischer, __ F. Supp. 2d __, __, No. 08 Civ. 7779, 2010 WL 431229, at *4 (S.D.N.Y. Feb. 8, 2010) (citing cases); see also Shomo v. City of New York, 579 F.3d 176, 184 (2d Cir. 2009) (plaintiff's complaints filed with prison commissioners were insufficient to establish their personal involvement); Seifert v. Corrections Corporation of America, No. 2:09 CV 119, 2010 WL 446969, at *5 n.4 (D. Vt. Feb. 1, 2010). ("[S]imply filing a complaint with a prison executive does not establish supervisor liability under § 1983.").  Therefore, I recommend that the claims against Warden Davis be dismissed.[8]

---

[8] In addition, based on a review of the parties' submissions, it does seem that Mr. Tavares has failed to exhaust his administrative remedies regarding his conditions-of-confinement

B.   <u>Municipal Liability</u>

Municipalities may only be liable under § 1983 if their violation of the plaintiff's federal rights resulted from an official policy, custom, or practice of the municipal body. <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 121-22 (1988) (citing <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 690-91, 694 (1978)). The Moving Defendants argue that the City should be dismissed as a defendant in this case based on the plaintiff's failure to satisfy the requirements of <u>Monell</u>. (Def. Memo. at 11-12).  The Moving Defendants note that Mr. Tavares attached to the Amended Complaint an acknowledgment by the Department of Corrections that the Footwear Policy permitted medical footwear to be worn.  (Def. Memo. at 12 (citing 12/5/08 Grievance)).   Thus, they contend, "any denial of medically necessary footwear would have been in violation, rather than

---

claim.  His evidence of exhaustion consists of the three letters that he sent to Warden Davis, described above.  Mr. Tavares states that he did not attach the letters to his Amended Complaint because they were taken from him during a search of his cell, and he only recovered them after retrieving copies that he had sent to his home. (Pl. Reply at 4).  However, letters to prison officials are not considered part of the grievance process for exhaustion purposes. <u>Harrison v. Goord</u>, No. 07 Civ. 1806, 2009 WL 1605770, at *8 (S.D.N.Y., June 9, 2009).  Because a determination on the issue of exhaustion requires examination of evidence outside the Amended Complaint, to decide this issue I would need to convert the defendants' motion to dismiss to one for summary judgment on the narrow issue of exhaustion and provide the parties with notice of the conversion. <u>McCoy</u>, 255 F. Supp. 2d at 251; Fed. R. Civ. P. 12(d).  Given that the plaintiff's claim fails on the merits, converting the motion would create unnecessary expense and delay.

pursuant to, official policy." (Def. Memo. at 12). While
certainly persuasive, such an acknowledgment does not necessarily
preclude <u>Monell</u> liability, as the City could still maintain an
informal custom or practice of withholding medical shoes.

Nevertheless, the plaintiff has failed to make any assertions
that his constitutional rights were violated on the basis of a
policy, custom, or practice of the City. In response to the Moving
Defendants' argument, he simply asserts that he will be able to
show municipal liability if the defendants answer the Amended
Complaint. (Pl. Reply at 10). Again, Mr. Tavares' contention is
based on a misunderstanding of the standard for deciding a motion
to dismiss, which focuses on the Amended Complaint alone.
Accordingly, I recommend that the City be dismissed as a defendant
in this action.

C.   <u>Dismissal With or Without Prejudice</u>

In his Order dismissing Mr. Tavares' original complaint, Judge
Sand made the plaintiff aware of § 1983's personal-involvement
requirement as well as the mandates of <u>Monell</u>. (Order at 5-6).
The Order, in several places, instructed Mr. Tavares to include in
an amended complaint specific allegations of the personal
involvement of the defendants. (Order at 4, 5, 6, 7). The Order
concluded by providing the plaintiff with leave to amend and
telling him that an amended complaint "must name all individuals he
alleges violated his rights in the caption of the complaint" and

13

"must also describe how each defendant named in the amended complaint was involved personally in each alleged event." (Order at 7). Additionally, the Order described the requirements of alleging municipal liability under § 1983. (Order at 6). It summarized the requirement by stating, "In other words, plaintiff must allege how a City policy or custom caused his injuries." (Order at 6). And it instructed Mr. Tavares to do so in his amended complaint. (Order at 7-8).

Therefore, because the plaintiff was made aware of these requirements and has failed to comply with them in his Amended Complaint, I recommend that his claims against the Moving Defendants be dismissed with prejudice.

<u>Conclusion</u>

For the reasons stated above, I recommend that the plaintiff's claims against the City and Warden Davis be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedural, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, U.S.D.J., Room 1340, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate

Respectfully submitted,

_James C. Francis IV_

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
        March 12, 2010

Copies mailed this date:

Pedro Juan Tavares
241-07-06598
George R. Vierno Center
09-09 Hazen Street
East Elmhurst, New York 11370

Emily Sweet, Esq.
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007

15